

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-12-1102

| | | |
|---|---|---|
| REGINA FOLEY | | **Opinion Delivered** June 4, 2014 |
| | APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FOURTEENTH DIVISION |
| V. | | [NO. 60DR-2006-299] |
| SEAN FOLEY | | |
| | APPELLEE | HONORABLE VANN SMITH, JUDGE |
| | | AFFIRMED |

**BILL H. WALMSLEY, Judge**

Appellant Regina Foley appeals from the trial court's order granting appellee Sean Foley's petition to relocate with the parties' two daughters. Regina challenges the application of the *Hollandsworth* presumption and argues that relocation was not in the children's best interest. We affirm.

Pursuant to an October 2007 order, Sean had primary custody of eleven-year-old E.F. and eight-year-old L.F. On April 9, 2012, Sean filed a motion to modify visitation, stating that he intended to relocate with the children to Atlanta in August. Regina filed a countermotion for change of custody and a motion to prohibit Sean's relocation. After a final hearing in August 2012, the trial court denied Regina's motion to change custody and granted Sean's request to relocate.

Regina first challenges the standard by which relocation cases are decided pursuant to

SLIP OPINION

*Hollandsworth v. Knyzewski*, 353 Ark. 470, 109 S.W.3d 653 (2003).  The *Hollandsworth* court announced a presumption in favor of relocation for parents with primary custody and held that the noncustodial parent has the burden to rebut the relocation presumption.  The polestar in making a relocation determination is the best interest of the child, and the court should take into consideration the following matters: (1) the reason for the relocation; (2) the educational, health, and leisure opportunities available in the location in which the custodial parent and children will relocate; (3) the visitation and communication schedule for the noncustodial parent; (4) the effect of the move on extended family relationships in the current location and the new location; and (5) the preference of the child, including the age, maturity, and the reasons given by the child as to his or her preference.  *Hollandsworth*, *supra*.

Regina argues that *Hollandsworth* should be overruled because it conflicts with the "best interest of the child" standard.  She claims that the trial court here misapplied the presumption and was prevented from conducting the traditional best–interest analysis.  As Sean notes, however, Regina failed to preserve these arguments for appeal.  She raised no argument below challenging the validity of the *Hollandsworth* presumption or its application in this case.  It is well settled that in order to preserve an argument for appeal, the issue must first be raised at the trial court level.  *Chastain v. Chastain*, 2012 Ark. App. 73, 388 S.W.3d 495.  Furthermore, Regina cannot now complain that the trial court did not specifically state that relocation was in the children's best interest because she did not request specific findings of fact and conclusions of law, as she was entitled to do under Arkansas Rule of Civil Procedure 52.  *Id*.

Regina next argues that remaining in Arkansas was in the best interest of the children. She first points to the testimony of a psychiatrist, Dr. Margarita Garcia, and a licensed clinical social worker, Sheila Strong, who had seen E.F. in their practices. Dr. Garcia saw E.F. twice in April 2012. She was concerned that E.F. was at risk for suicide and that she was enmeshed with her mother and estranged from her father. Dr. Garcia felt that the move to Atlanta would cause turmoil for E.F. as she was an extremely worried child and did not know how to manage stress. Dr. Garcia noted that although E.F. had learned about the potential move in January 2012, neither E.F. nor her mother informed Sean that she knew until March or April. Dr. Garcia also testified about misconceptions E.F. had when Regina had been absent in the past while attending drug rehabilitation. Dr. Garcia noted that E.F. had thought that her father was keeping her away from her mother and that her mother did not want her. Dr. Garcia had Regina explain to E.F. that in the past she had a prescription–drug addiction and had gone away to rehabilitation.

Strong saw E.F. May 18 through July 26. She noted that E.F. had been threatening suicide and advised the parties to take E.F. to a psychiatric hospital even if her threats were manipulative. E.F. was evaluated at a hospital on June 8, but the hospital did not feel that she was a suicide risk. Strong said that both parents had since helped E.F. understand that suicide was not an option, and her next plan was to run away from her father's home. Strong noted E.F.'s complaints about arguing with her father and him taking away her phone. Strong said that Sean's personality was intimidating to the children and she had talked with him about being less controlling and more nurturing. Strong believed that E.F. would be very angry

3





initially if she had to move, and she recommended family therapy.

Both children testified that they were more comfortable around their mother and they did not want to leave her, their friends, or their school; however, L.F. indicated that they had practiced their testimony with their mother. Although the children claimed to fear Sean, when asked to explain their fear they only relayed examples of what they perceived as unfair discipline. Testimony established that the children had a good relationship with Sean before learning about the move.

Regina argues that the children had a strained psychological relationship with their father and that E.F.'s emotional issues would only intensify if she was forced to move. She argues that the children's emotional stability and strong desire to live with her should have been major factors in determining their best interest. Regina claims that the children had spent as much, if not more, time with her as with Sean over the past two years, and it would be detrimental if they could see her only four days a month.

The trial court heard extensive testimony concerning E.F.'s emotional state and thoughts about moving. However, the attitudes and wishes of the child are not controlling in determining whether relocation is in the child's best interest. *See Mathews v. Schumacher*, 2010 Ark. App. 155, 375 S.W.3d 31. The testimony of Strong, the parties, and E.F. showed that she was no longer a suicide risk. Her well-being was not in danger, and neither therapist opined that she should not move. Sean testified that he had already sought out therapists in Atlanta.

The trial court stated that it had considered the *Hollandsworth* factors and found that

Regina failed to rebut the presumption in favor of relocation. The court noted that Sean had found better employment with more flexible work hours. Sean testified that he would work less but earn the same as he earned in Little Rock. The court also noted that he would be closer to his family. Sean's two brothers and their families lived in the area where he had rented a house, and his mother was also relocating from Little Rock. The court noted that the children had strong family ties with their families in Arkansas and Georgia. Regarding visitation, *Hollandsworth* presupposes that visitation and communication between the child and the noncustodial parent will be impaired. *Fischer v. Smith*, 2012 Ark. App. 342, 415 S.W.3d 40. However, if there continues to be meaningful visitation, the presumption in favor of relocation is not rebutted. *Id.* Regina was awarded visitation two weekends per month, one in Atlanta and one in Little Rock, the entire summer except for two weeks, and alternating holiday visitation. The court also ordered "free telephone privileges" at any reasonable time. The court ordered that Sean begin counseling for E.F. in Atlanta.

In reviewing equity cases, appellate courts conduct a de novo review of the record and do not reverse a finding by the trial court unless it is clearly erroneous or clearly against the preponderance of the evidence. *Chastain v. Chastain*, 2012 Ark. App. 73, 388 S.W.3d 495. We also give due deference to the trial court in judging the credibility of the witnesses, and this deference is even greater in cases involving child custody, as a heavier burden is placed upon the trial court to utilize to the fullest extent its powers of perception in evaluating the witnesses, their testimony, and the best interest of the children. *Id.* We hold that the trial court properly applied the *Hollandsworth* presumption and that its decision was not clearly





erroneous.

Affirmed.

HARRISON and WYNNE, JJ., agree.

*Dodds, Kidd & Ryan*, by: *David W. Kamps* and *Adrienne Griffis*, for appellant.

*Hilburn, Calhoon, Harper, Pruniski & Calhoun, LTD.*, by: *Traci LaCerra* and *Mary Claire McLaurin*, for appellee.